UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-14018-CR-CANNON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SHAWN ANTHONY JACKSON OUTLER,

    Defendant.
_____/

## DEFENDANT'S MOTION FOR DOWNWARD VARIANCE & SENTENCING MEMORANDUM

When federal agents arrested Shawn, he was a 22-year-old college student studying criminal justice at FAU just months from graduation. He was also an alcoholic, a substance abuser, and a pornography addict who had spent his late teens and early twenties exploring deviant sexual interests in virtual online relationships with young girls he met through social media. He knew what he was doing was immoral because it felt wrong, which is why he sought mental health counseling almost a year earlier. He wanted to address the trauma underlying his addictions – his father's verbal and emotional abuse, his mother's emotional neglect, his classmates' repeated bullying, his sexual victimization at the hands of a babysitter, and his early exposure to pornography. He regretted the way he had treated those girls, and he wanted to change. He still does.

Rather than graduating from college and pursuing a career in criminal justice, Shawn is now a convicted felon and a sexual offender heading to federal prison. The

1

Sentencing Guidelines recommend that he serve 360 months.[1] He hopes this Court will consider his youth, his trauma, and his sincere remorse and impose a sentence of 180 months instead.

### A. Both science and the law recognize youth as a significant mitigator.

The Supreme Court has long recognized youth as a significant mitigator for criminal behavior. In *Roper v. Simmons*, 543 U.S. 551, 569-570 (2005), the Court invalidated the death penalty for juvenile offenders, finding they have "a lack of maturity and an underdeveloped sense of responsibility" that leads to "impetuous and ill-considered actions and decisions," they are "more vulnerable. . . to negative influences and outside pressures," their character "is not as well formed as that of an adult" and their personality traits "are more transitory, less fixed." The Court concluded juveniles are thus inherently less culpable and more likely to reform than their adult counterparts and, as such, found suspect "any conclusion that [they] fall[] among the worst offenders." *Id*. at 570.

The Court then applied the same reasoning when it found life sentences without the possibility of parole for juveniles convicted of non-homicide offenses also violate the Eighth Amendment. *Graham v. Florida*, 560 U.S. 48 (2010). In *Graham*, the Court noted that "developments in psychology and brain science [since *Roper*] continue to show fundamental differences between juvenile and adult minds." Those

---

[1] Shawn filed an objection to the calculation of this guideline range at DE 69. He maintains that objection here, but submits a downward variance is appropriate regardless of this Court's ruling on that objection.

2

findings "of transient rashness, proclivity for risk, and inability to assess consequences" both lessened "moral culpability' and increased the likelihood that, as the juvenile develops neurologically, his "deficiencies will be reformed." *Id*. at 68. In *Miller v. Alabama*, 567 U.S. 460, 473 (2012), the Court extended this reasoning to homicide offenses too, explaining that "none of what [the Court] said about children – about their distinctive (and transitory) mental traits and environmental vulnerabilities – is crime-specific."

Importantly, the *Roper* Court also noted "the qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper*, 543 U.S. at 574. Science supports this statement. Although the American Academy of Pediatrics has generally defined adolescence through age 21, it has also found that demarcation line "arbitrary" because of the "increasing evidence that brain development has not reliably reached adult levels of functioning until well into the third decade of life." American Academy of Pediatrics. Policy Statement: Age Limit of Pediatrics. Pediatrics (journal). Vol. 140, Issue 3, Sept. 2017, available at https://publications.aap.org/pediatrics/article/140/3/e20172151/38333/Age-Limit-of-Pediatrics.

Indeed, the high Court's decisions "rested not only on common sense – on what 'any parent knows' – but on science and social science as well." *Miller* 567 U.S. at 471 (*quoting Roper*, 543 U.S. at 570). Brain science recognizes that young people "(1) tend to be more strongly motivated by the possibility of reward than adults; (2) have greater difficulty controlling their impulses; and (3) have greater difficulty

3

recognizing and regulating emotional responses" and that these attributes continue to develop through early adulthood. Brief for the American Medical Association and American Academy of Child and Adolescent Psychiatry as Amici Curiae in Support of Neither Party, *Miller*, 567 U.S. 460, 2012 WL 121237, 7-11. Brain imaging techniques reflect the biological basis for these differences evolving well into late adolescence, highlighting differences in the physical structure of the brain, its makeup, and its ways of processing input. *Id.* at 13-30; *see also*, Center for Law, Brain & Behavior at Massachusetts General Hospital, *White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys and Policy Makers* 2 (2022) available at https://clbb.mgh.harvard.edu/wp-content/uploads/CLBB-White-Paper-on-the-Science-of-Late-Adolescence-3.pdf (hereinafter "White Paper").

And, while late adolescents take more risks, engage in more sensation-seeking behavior, and are more likely than young adults to respond to immediate outcomes and less likely to delay gratification, most "will not continue to offend through their twenties, thirties and beyond." *White Paper* at 2. Science shows the behavioral qualities of adolescents reflect their incomplete "sense of self" - one significantly influenced by their maturity and surrounding social environment. Brief for the American Psychological Association et. al. as Amicus Curiae in Support of Petitioners, *Miller*, 567 U.S. 460, 2012 WL 174239, 19. This process of identity change "typically remains incomplete until at least the early twenties" when a more permanent personality becomes established. *Id.* at 19-20. In other words, poor

4

decision-making and antisocial behaviors are ones many outgrow with time. *Id*. at 21.

Nonetheless, for Shawn, the Guidelines recommend the maximum sentence – a sentence that should be reserved only for the worst of 2G2.1 offenders. Yet, Shawn's youth alone – he was just 19 when his conduct began and 22 when the agents arrested him – "render[s] suspect any conclusion that [he] falls among the worst offenders." *Roper*, 543 U.S. at 570. His youth made him more susceptible "to immature and irresponsible behavior," suggests his conduct was "not as morally reprehensible as that of an [older] adult," and evinces a high likelihood he will reform. *Id*. This Court should consider his youth as mitigation and sentence him accordingly.

### B. Shawn's significant trauma and exposure to pornography at a young age should also mitigate his punishment.

Dr. Sheila Rapa is a clinical and forensic psychologist who specializes in forensic evaluations of sexual abuse and sexually offending behaviors in children, adolescents, and adults. She evaluated Shawn and, at sentencing, she will explain the profound impact his adverse childhood experiences – his father's verbal and emotional abuse, his mother's emotional neglect, his classmates' bullying, his babysitter's sexual abuse, and his early exposure to pornography – had on his emotional and psychological development and how those experiences ultimately impacted his behavior in this case. She will describe a young man with serious mental health issues and social awkwardness, who developed early onset pornography and chatroom addictions and substance abuse disorders – an individual who needs

5

lengthy mental health treatment more than he needs a lengthy prison sentence. Her report and curriculum vitae are attached as Exhibit 1a and 1b.

### C. This Court can reasonably protect the public without sentencing Shawn to 30 years in prison.

The Adam Walsh Act permits the government to seek continued detention at the end of a sexual offender's prison sentence if it believes he remains sexually dangerous at that time. 18 U.S.C. § 4248. Thus, this Court need not decide today whether 30 years is necessary to protect society from Shawn in the future. It can wait to see what impact a shorter, but still lengthy, prison sentence has on him before deciding whether he is too dangerous to release.

This Court can also order a lengthy period of supervised release, allowing probation to monitor Shawn's behavior with the constant threat of additional incarceration if he fails to comply. Moreover, regardless of any term of supervised release, federal law and all state laws require him to register as a sexual offender upon his release from prison. As such, any community in which he chooses to live will be aware of any remaining danger he may present, and law enforcement can monitor him accordingly. Simply stated, this Court need not incarcerate Shawn for 30 years to protect society from him.

### D. This Court should avoid sentencing disparities.

In determining a sentence sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing, this Court must consider "the need to avoid unwarranted sentence disparities" among similarly situated defendants. 18 U.S.C. § 3553(a)(6). Between 2017 and 2021, the average and median sentences nationally for

section 2G2.1 offenders who, like Shawn, had little or no criminal history (category I) was 260 and 240 months respectively.[2] Comparison of Shawn's case to several recent, local cases is instructive.

In *United States v. Andrew Melendez-Gonzalez*, Case No. 19-CR-80208-DMM, the 20-year-old defendant was accused of soliciting sexually explicit images and videos from a 15-year-old minor in the Philippines. The young girl's mother attempted to end the relationship when she discovered it, and the defendant responded with threats of violence and public exposure of the prior images and videos the girl had sent. He pled guilty to production of child pornography and, though he also pled guilty to several other related offenses, the government agreed to a concurrent sentence on all counts, resulting in effectively the same statutory sentencing range Shawn faces here – 15 to 30 years in prison.

Unlike Shawn, however, Mr. Melendez-Gonzalez had a prior record. At the time of his federal offense, he was on state probation for very similar behavior. Two years earlier, he had actual sex with a 15-year-old minor and had solicited and received sexually explicit images from her. When she attempted to end the relationship, he made good on his threats to post those images online. Rejecting the

---

[2] Undersigned Counsel used the Sentencing Commission's Interactive Data Analyzer found at https://ida.ussc.gov/analytics/saw.dll?Dashboard to make this determination. To access the specific data, from the top ribbon menu, select the "Sentencing Outcomes" hyperlink, then select the option for "Sentence Length." From there, use the "Fiscal Year" filter to limit the years 2017-2021, the "Primary Guideline" filter to select § 2G2.1, and the "Criminal History" filter to select "Category I." Scroll down to the *Average and Median Sentence Length* Bar Graphs for raw numbers and percentages.

7

guideline range (which also called for the maximum possible sentence) and the government's recommendation of 360 months, Judge Middlebrooks imposed a sentence of 240 months.

In *United States v. Marco Orrego*, 17-CR-80097-DMM, the government actually *agreed* to a sentence of 240 months where the defendant's conduct was again more egregious than the conduct here. In that case, the defendant pled guilty to one count of sex trafficking of a minor and one count of production of child pornography after he had sex with a 16-year-old girl on multiple occasions, photographed and videotaped his encounters, and then acted as her pimp. He helped her place an advertisement on Backpage.com that offered her sexual services, encouraged her to have sex with other men for money, and then profited from her encounters with those men. The victim complied because she was "extremely scared" and "had nowhere to go." Yet Judge Middlebrooks approved of the parties' agreement and imposed the 240-month sentence.

In *United States v. Jeffrey Holcombe*, Case No. 21-CR-20261-RAR, Judge Ruiz imposed a 230-month sentence after the defendant pled guilty to one count of production of child pornography. There, the defendant, a 49-year-old man, met a 13-year-old girl on the internet and engaged in an online sexual relationship. When the victim told him she did not want to send any more images or videos, he threatened to sell her previously disclosed images online, post them around the neighborhood where she lived, and find her and her family. At one point during their chats, the defendant asked the victim to insert a hairbrush into her rectum – a request with which she

8

complied.

Finally, in *United States v. Christian Sandoval*, Case No. 22-CR-60037-RAR, Judge Ruiz sentenced the defendant to 231 months in prison after he admitted enticing an eight-year-old girl to send him sexually explicit images of herself. He repeatedly asked her for the images, directed her on how and where to produce them, and overcame her reluctance by sending her images of another eight-year-old girl with her vagina exposed. The images she sent him included one of her penetrating her vagina, as he instructed. While Judge Ruiz ultimately imposed a 231-month sentence, it is important to note the government in that case *actually recommended* the same sentence Shawn seeks here – 180 months.

It is difficult to see how anyone could describe Shawn's conduct as worse than that of any of these defendants and this Court should fashion a sentence that reflects this fact.

### E. **This Court should place little weight on the recommended guideline range here because section 2G2.1 does not distinguish between the least and worst offenders.**

While this Court must properly calculate an advisory guideline range, it may reject that range "based on a policy disagreement" with the particular guideline at issue. *Spears v. United States*, 555 U.S. 261, 264 (2009); *see also Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Here, this Court should place little weight on section 2G2.1's sentencing recommendation because, despite the Sentencing Commission's stated goal of "proportionality in sentencing," U.S.S.G. § 1A1.3, section 2G2.1 fails to distinguish between the least and worst production offenders. *Jacob*, 631 F. Supp.2d

at 1114-15; *see also United States v. Price*, 775 F.3d 828, 841 (7th Cir. 2014) (affirming the district court's decision to categorically reject the advisory guideline range for the same reasons). A comparison of this case to other section 2G2.1 cases illustrates the point.

Here, Shawn, a first-time offender, used the internet to engage in consensual, online, sexual relationships with minors between ages 12-17 – while he was between the ages of 19-21 – during which he solicited them to send him explicit videos and images of themselves and engage in mutual masturbation via video conference. For this conduct, probation calculated a guideline range of 360 months – the maximum punishment the statute permits. [PSR ¶ 170].

In contrast to Shawn's behavior, section 2G2.1 recommended the same sentence for a defendant in his forties who travelled to Asia over 4-5 years to rape, sodomize, humiliate, and torture more than 50 children, some as young as four years old. *See United States v. Irey*, 612 F.3d 1160, 1166-68 (11th Cir. 2010). That defendant recorded his exploits and then distributed them online, trading the images with other like-minded individuals. *Id.* at 1167. The guideline also recommended a 360-month sentence for a defendant who victimized his stepdaughter for more than a decade starting when she was only eleven years old, videotaping himself raping her, beating her until she cried and begged him to stop, and even inviting another adult male to do the same. *United States v. Dean*, 635 F.3d 1200, 1202-03 (11th Cir. 2011). Other defendants who <u>physically, sexually abused minors</u> have received the same. *United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019) (sentencing defendant who sexually

abused his prepubescent granddaughters on a nightly basis for over a year); *United States v. Harrelson*, 781 Fed. Appx. 841 (11th Cir. 2019) (affirming sentence for defendant who made multiple videos of himself having sex with a nine-year old girl).

Though Shawn never touched a child, section 2G2.1 treats him no differently than other offenders who personally, repeatedly, and violently raped and tortured children and recorded their acts for their own pleasure. Neither his lack of any criminal history nor his decision to accept responsibility yield him any relief. Even with a criminal history category I and a 3-level reduction for acceptance, his guideline range remains the same: 360 months. This kind of absurd result explains why district courts have imposed below guidelines sentences for more than 60 percent of section 2G2.1 cases.[3]

**F. "Mercy bears richer fruits than strict justice."**
**~ Abraham Lincoln**

While "[m]ercy is seldom included on the list of "traditional" rationales for sentencing," section 3553 evinces Congress' intent – this Court should impose the "lowest possible penalty consistent with the goals of sentencing." *United States v Blarek*, 7 F. Supp. 2d 192, 210 (E.D.N.Y. 1998); *see also* 18 U.S.C. § 3553(a). "The notion that undue harshness should be avoided by those sitting in judgment has long

---

[3] Undersigned counsel used the Sentencing Commission's Interactive Data Analyzer found at https://ida.ussc.gov/analytics/saw.dll?Dashboard to make this determination. To access the specific data, from the top ribbon menu, select "Guideline Application" hyperlink, then select "Sentences Relative to Guideline Range." From there, use the "Primary Guideline" filter to select § 2G2.1. Then scroll down to the *Sentences Imposed Relative to Guideline Range* data table for raw numbers and percentages.

been a part of the human fabric and spirit. Lenity is often the desirable route." *Id*. Here, for all of the reasons noted, Shawn begs this Court's mercy.

WHEREFORE, the Defendant, SHAWN ANTHONY JACKSON OUTLER, respectfully requests this Court grant this motion for a downward variance and sentence him to 180 months.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

*s/Scott Berry*
Scott Berry, B.C.S.
Assistant Federal Public Defender
Attorney for Defendant
Bar Number: 0525561
250 South Australian Avenue
Suite 400
West Palm Beach, Florida 33401
Phone: (561) 833-6288
Email: scott_berry@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on December 6, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                           s/ *Scott Berry*
                                           Scott Berry